**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

---

THE STATE OF RHODE ISLAND by and through ATTORNEY GENERAL PETER F. NERONHA,

     *Plaintiff*,

     v.

KALSHIEX LLC.; QCX LLC d/b/a POLYMARKET US,

     *Defendants*.

---

Case No.: _____

Superior Court for the State of Rhode Island, Providence County, Case No. PC-2026-2753

NOTICE OF REMOVAL TO FEDERAL COURT

**NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1331, 1441(a), 1442(a) and 1446, Defendant QCX LLC d/b/a Polymarket US ("Polymarket US"), by and through its attorneys, hereby removes the above-captioned action from the Providence County Superior Court to the United States District Court of Rhode Island.  KalshiEX LLC consents to this removal.  *See* Exhibit 1.

This Notice of Removal is not intended to constitute and should not be construed as constituting the general appearance or appearance on the merits of Defendants in this matter.  By filing this Notice of Removal, Defendants do not waive any defenses they have to this action whether in state or federal court, including, but not limited to, improper service of process and/or lack of personal jurisdiction.  Polymarket US reserves the right to amend or supplement this Notice of Removal.

In support of removal, Polymarket US states as follows:

**BACKGROUND**

1.     Prediction markets, exchanges that trade a kind of derivative financial instrument known as event contracts, are an important component of modern, federally regulated financial markets.  Hundreds of thousands of U.S. consumers—and millions worldwide—rely on these

1

markets to obtain real-time, accurate information about consequential events in politics, finance, technology, news, and sports.  Through the Commodity Exchange Act ("CEA"), Congress placed these markets squarely within a comprehensive federal regulatory regime and vested exclusive supervisory authority in the Commodity Futures Trading Commission ("CFTC").

2.    Polymarket US operates a federally licensed designated contract market that offers event contracts.  Event contracts are a type of "swap," a financial contract where two parties agree to exchange—swap—payments with each other based on a pre-agreed formula, such as the price of crude oil or interest rates.  For event contracts, the "payoff is based on a specified event or occurrence such as the release of a macroeconomic indicator, a corporate earnings announcement, or the dollar value of damages caused by a hurricane."  CFTC, *Futures Glossary: A Guide to the Language of the Futures Industry*.[1]  Polymarket US offers event contracts subject to and in full compliance with the CFTC's regulatory oversight and federal law.

3.    The CFTC itself has repeatedly reaffirmed that the regulation of exchange-traded event contracts (and other "swaps") falls squarely within its "exclusive jurisdiction" and core institutional responsibility.  7 U.S.C. § 2(a)(1)(A).  In February of this year, the CFTC filed an amicus brief in a case seeking to enjoin the State of Nevada's threatened enforcement action against another designated contract market.  *See N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. 38.2 ("CFTC Ninth Cir. Amicus Brief").  The CFTC explained that its participation was necessary to protect against state efforts to "invade the CFTC's exclusive jurisdiction" over federally regulated derivatives trading.  *Id.* at 2.  "Subjecting derivatives listed on a CFTC-registered [designated contract market] to State regulation," the CFTC warned, "would have destabilizing economic effects," *id.* at 28 (capitalization altered), and "erode the nationally

---

[1] https://www.cftc.gov/LearnAndProtect/AdvisoriesAndArticles/CFTCGlossary/index.htm.

uniform framework Congress established to reduce risk, promote transparency, and safeguard market integrity within the financial system," *id.* at 17–18. When the "federal agency charged with administering and enforcing" the CEA seeks to defend its exclusive authority in related litigation, there can be no serious dispute about where adjudication properly belongs. *See id.* at 1. And earlier this month, the CFTC filed another amicus brief in a Sixth Circuit appeal involving KalshiEX LLC's litigation against Ohio. *See KalshiEX v. Schuler*, No. 26-3196 (6th Cir. May 12, 2026), Dkt. 31 ("CFTC Sixth Cir. Amicus Br."). It again asserted its exclusive jurisdiction and warned against the State's "jurisdictional overreach." *Id.* at 1–2, 9.

4.      The CFTC has since sought to protect its exclusive jurisdiction by filing lawsuits against multiple States that have sought to outlaw, regulate, or otherwise restrain federally regulated prediction markets. *CFTC Sues Trio of States to Reaffirm its Exclusive Jurisdiction Over Prediction Markets*, CFTC Press Release No. 9206-26 (Apr. 2, 2026) ("*CFTC Press Release*"); *see* Complaint, *United States v. Arizona*, No. 2:26-cv-02246-DMF (D. Ariz. Apr. 2, 2026), Dkt. No. 1 ("Arizona Compl."); Complaint, *United States v. Connecticut*, No. 3:26-cv-00498 (D. Conn. Apr. 2, 2026), Dkt. No. 1 ("Connecticut Compl."); Complaint, *United States v. Illinois*, No. 1:26-cv-03659 (N.D. Ill. Apr. 2, 2026), Dkt. No. 1 ("Illinois Compl."); *see also* Complaint, *United States v. Minnesota*, No. 26-cv-2661 (D. Minn. May 19, 2026) ("Minnesota Compl."); Complaint, *United States v. New York*, No. 1:26-cv-03404 (S.D.N.Y. Apr. 24, 2026), Dkt. No. 1 ("New York Compl."); Complaint, *United States v. Wisconsin*, No. 2:26-cv-00749 (E.D. Wis. Apr. 28, 2026), Dkt. No. 1 ("Wisconsin Compl."). The CFTC explained that those State efforts "intrude[] on the exclusive federal scheme Congress designed to oversee national swaps markets" and, if permitted to continue, would "undermine[] [the] uniformity" Congress mandated, Arizona Compl. ¶¶ 6, 63; New York Compl. ¶¶ 6, 66; Wisconsin Compl. ¶¶ 5, 67; *see also* Connecticut Compl. ¶¶ 3, 9, by

subjecting CFTC-regulated exchanges to a "fragmented patchwork of state regulations" that have "resulted in poorer consumer protection and increased risk of fraud and manipulation," *CFTC Press Release*, *supra*.

5.      The CFTC emphasized that event contracts traded on designated contract markets are "swaps" within the meaning of the CEA and fall squarely within the CFTC's exclusive jurisdiction, which "prohibits States from invading" that authority.  Arizona Compl. ¶¶ 7, 10; New York Compl. ¶¶ 7, 10; Wisconsin Compl. ¶¶ 6, 10; *see also* Connecticut Compl. ¶¶ 4, 8; Illinois Compl. ¶¶ 4, 8.  Those federally regulated contract markets subject to the CFTC's exclusive jurisdiction include Polymarket US.  *See* Illinois Compl. ¶ 37; *see also id*. ¶ 24.

6.      In four of its lawsuits—those against Arizona, Minnesota, New York, and Wisconsin—the CFTC has further defended its jurisdiction by moving for preliminary injunctions prohibiting the States from pursuing criminal or civil enforcement actions against CFTC-regulated contract markets or enforcing state laws that outlaw the trading of event contracts.  *See* Motion for Preliminary Injunction, *United States v. Minnesota*, No. 26-cv-2661 (D. Minn., May 19, 2026), Dkt. No. 4; Motion for Preliminary Injunction and Temporary Restraining Order, *KalshiEX LLC v. Johnson*, No. 2:26-cv-01715-MTL (D. Ariz., Apr. 8, 2026), Dkt. No. 49; Motion for Preliminary Injunction, *United States v. New York*, No. 1:26-cv-03404 (S.D.N.Y., May 1, 2026), Dkt. No. 34; Motion for Preliminary Injunction, *United States v. Wisconsin*, No. 2:26-cv-00749 (E.D. Wis. May 1, 2026), Dkt. No. 6.

7.      The only court to rule on the CFTC's request for a preliminary injunction has granted the requested relief:  On May 5, the District of Arizona granted the CFTC its preliminary injunction.  *See* Order, *KalshiEX LLC v. Johnson*, No. 2:26-cv-01715-MTL (D. Ariz., May 5, 2026), Dkt. No. 96 ("Arizona PI Order").  The court concluded that event contracts are properly

4

considered "swaps" because they are "tied to the outcome of certain events" and because "stakeholders have financial exposure" to the outcomes of the contracts' underlying events. *Id*. at 6–8. The court then determined that "field and conflict preemption independently bar" Arizona's effort to enforce its gaming laws against another designated contract market, citing the CEA's comprehensive scheme for regulating swaps. *Id*. at 10–15.

8.      The State of Rhode Island has chosen to invade the CFTC's exclusive jurisdiction anyway. Without any notice or warning, Plaintiff sued Polymarket US in state court, seeking an order shutting down Polymarket US's federally regulated operations in Rhode Island. That order would directly conflict with federal law and intrude upon the CFTC's exclusive and comprehensive authority to regulate exchange-traded derivatives markets nationwide.

9.      The Third Circuit has recently—and squarely—held that state efforts to shut down operations of federally regulated derivatives exchanges are unlawful. *KalshiEX LLC v. Flaherty*, 172 F.4th 220, 226 (3d Cir. 2026). In *Flaherty*, the Third Circuit explained that the CEA "preempts state laws that directly interfere with swaps traded on DCMs" and that "sports-related event contracts are swaps traded on a CFTC-licensed DCM." *Id.* Another district court has also recently held the same. *See KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026) (holding that "sports event contracts are 'swaps'" such that state law is preempted by the CEA).

10.     Exchanges like Polymarket US are subject to exclusive federal oversight, not state regulation. Allowing state regulators to shut down derivatives trading by rushing to state courts would fracture the uniform national framework that Congress designed and that the CFTC alone may police.

11.     This Court has jurisdiction under 28 U.S.C. § 1442 because Plaintiff's suit directly targets Polymarket US's "act[ions] under" the CFTC. In operating a designated contract market,

5

Polymarket US acts as a "self-regulatory organization" exercising delegated authority from the CFTC.  As a self-regulatory organization, Polymarket US does not merely comply with the federal regulatory regime.  It is a frontline regulator that assists the CFTC by performing regulatory functions the federal agency itself would otherwise carry out.  CFTC Staff Advisory at 1, CFTCLTR No. 26-08 (Mar. 12, 2026) ("*Prediction Markets Advisory*").  And those functions— regulating market access, certifying event contracts for listing, and promulgating and enforcing rules to promote fair and equitable trading and to protect the market and market participants—are exactly what Plaintiff's suit challenges.  Because Plaintiff's state-court lawsuit seeks to interfere with the federal government's exclusive authority and the system of self-regulation Congress created, Polymarket US is entitled to have its federal preemption defense resolved in federal court.

12.     This Court also has jurisdiction under 28 U.S.C. § 1331.  Plaintiff's purported state law claims necessarily turn on disputed questions about the meaning and scope of the federal CEA.  Plaintiff's claims expressly raise a question of federal law under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. § 2701, *et seq.*, and its purported state-law claims necessarily turn on disputed questions about the meaning and scope of the federal CEA.  For example, to succeed on its claims, Plaintiff must consider IGRA's definition of "Class III gaming."  Plaintiff must further prove that Polymarket US's event contracts are not lawful transactions; this will require Plaintiff to grapple with the legality of the event contracts under the CEA.  Again, this Court is the proper forum to resolve those questions of federal law.

## I.     Federal Regulatory Authority

13.     Defendant Polymarket US operates a federally regulated derivatives exchange on which users nationwide trade event contracts—derivative financial instruments that constitute "swaps" under the CEA.  *See* 7 U.S.C. § 1a(47)(A)(ii); *see*, *e.g.*, Arizona Compl. ¶¶ 5, 31, 35.

14.    On July 9, 2025, the CFTC formally approved Polymarket US as a designated contract market under the CEA—a designation reflecting an extensive federal finding that Polymarket US satisfies stringent requirements that govern derivatives trading on federal exchanges, including with respect to market integrity, access, transparency, financial safeguards, surveillance, and customer protection.  *See* 7 U.S.C. §§ 7(a), 7(d), 8(a).

15.    When it comes to exchange-traded event contracts, Congress could not have been clearer: the CFTC exercises "exclusive jurisdiction" over transactions involving swaps traded or executed on a designated contract market.  7 U.S.C. § 2(a)(1)(A).  That exclusivity leaves no room to target federally regulated derivatives markets with state licensing regimes, enforcement actions, or injunctive relief.

16.    Polymarket US operates in full compliance with the CFTC's comprehensive regulatory regime, including the CEA's 23 core principles and all CFTC rules governing market participant access, contract design, surveillance, enforcement, dispute resolution, and customer protection.  *See* 7 U.S.C. §§ 7(d), 8(a); 17 C.F.R. §§ 38.3(a), 38.151.

## II.    Rhode Island's Suit Directly Conflicts With Federal Law.

17.    Despite this exclusive federal regime, the State of Rhode Island filed suit against Polymarket US and KalshiEX LLC on May 21, 2026, asserting that federally regulated event contracts are subject to the Rhode Island Constitution and constitute "unauthorized gambling" under Rhode Island law.  Compl. ¶¶ 112, 116 (citing 42 R.I. Gen. Laws § 42-61.2-1, -2.2, -2.3).

18.    Plaintiff's theory is that Polymarket US's activities constitute "sports wagering" as it relates to the Rhode Island Constitution, and "casino gaming" and "online sports wagering" under the Rhode Island General Laws, such that Polymarket US "render[s itself] subject to Rhode Island's gambling laws and regulations."  Compl. ¶¶ 103–109, 112–14.  Plaintiff first claims that

Polymarket US "operate[s] in Rhode Island outside of the State's control . . . in violation of Sections 15 and 22 of Article 6 of the Rhode Island Constitution." *Id.* ¶ 106. Plaintiff next claims that "casino gaming" is limited to certain state-run operations and the "full operational control" of the State Lottery. *Id.* ¶ 108. According to Plaintiff, Polymarket US lacks the requisite "license or contract" from the State Lottery to offer "online sports wagering." *Id.* ¶ 110.

19. Plaintiff requests declaratory judgments that Polymarket US's offering of event contracts in Rhode Island is subject to the Rhode Island Constitution, that Polymarket US's event contracts are "casino gaming" and "online sports wagering," that "casino gaming" and "online sports wagering" "are restricted to the operations of" the Rhode Island Lottery, and that Polymarket US is engaging in "unauthorized gambling"; a permanent injunction enjoining and restraining Polymarket US's Rhode Island operations; restitution and disgorgement; and any other relief that the court deems just and proper. Compl. ¶¶ 112–19.

20. Polymarket US will demonstrate that Plaintiff's Complaint fails as a matter of law. Polymarket US's event contracts are not subject to State regulation as "gaming" or "wagering." Congress expressly granted the CFTC—not the States—"exclusive jurisdiction" over exchange-traded event contracts. 7 U.S.C. § 2(a)(1)(A); *see* CFTC Ninth Cir. Amicus Br. 2; CFTC Sixth Cir. Amicus Br. 1. It authorized the CFTC—not the States—to determine whether event contracts involve "gaming" and whether they may be listed or must be prohibited in the public interest. 7 U.S.C. § 7a-2(c)(5)(C). And it did so to ensure that regulation of "market participants" remains "under the oversight of the *Commission*," 7 U.S.C. § 5(b) (emphasis added)—and no "other regulatory agencies," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 386 (1982).

21.    Rhode Island's attempt to override and usurp the CFTC's exclusive federal authority through state-law declarations and injunctions is not regulation—it is unlawful displacement.

## FIRST GROUND FOR REMOVAL: FEDERAL OFFICER REMOVAL

22.    The federal officer removal statute guarantees Polymarket US the right to have its federal preemption defense heard by a federal court.  As a self-regulatory organization, Polymarket US exercises delegated authority under the supervision of the CFTC to carry out functions the CFTC itself would otherwise perform.  And Plaintiff's suit directly targets the way Polymarket US exercises that delegated authority.

23.    The federal officer removal statute authorizes removal of an action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1).  The Supreme Court has emphasized that "the statute must be 'liberally construed'" and that "[t]he words 'acting under' are broad."  *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007).  Likewise, "[t]he phrase 'relating to' sweeps broadly," and "a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct."  *Chevron USA Inc. v. Plaquemines Par., Louisiana*, 146 S. Ct. 1052, 1060 (2026).  The First Circuit, too, has repeatedly affirmed that removal under Section 1442 is broader than under other removal statutes.  *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 35 (1st Cir. 2022) (holding that 28 U.S.C. § 1442(a)(1) requires only a "relating to" connection, not a causal nexus).

24.    Federal officer removal "is an exception to the 'well-pleaded complaint rule,'" allowing "suits against federal officers to be removed despite the nonfederal cast of the complaint." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006) (alterations adopted); *Camacho v.*

*Autoridad de Telefonos*, 868 F.2d 482, 487 (1st Cir. 1989) (explaining that removal under 28 U.S.C. § 1442(a)(1) "is not vitiated even if the case necessitates the construction and interpretation of state or local law").  In assessing federal officer removal, courts credit the defendant's "theory of the case for purposes" of the "jurisdictional inquiry."  *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999); *see also Maine v. 3M Company*, 159 F.4th 129, 140 (1st Cir. 2025) (observing that remand to state court "contravenes one of the most important reasons for removal, which is to have the validity of the defense . . . tried in a federal court") (citation modified).

25.      Polymarket US satisfies the three-part test for federal officer removal because (1) it is "a person 'acting under' a federal officer," (2) this suit is "for or relating to any act under color of such office," and (3) it has "a colorable federal defense."  *Plaquemines Par.*, 146 S. Ct. at 1057–58.  And because Polymarket US is entitled to remove under Section 1442, then "the entire action belongs in federal court."  *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 180 (1st Cir. 2024); *see also Conjugal P'ship Comprised by Joseph Jones & Verneta G. Jones v. Conjugal P'ship Comprised of Arthur Pineda & Toni Pineda*, 22 F.3d 391, 396 (1st Cir. 1994) ("By raising a colorable federal defense, a defendant-official converts an otherwise nonremovable state law action into one that falls within the federal court's jurisdiction.").

26.      *First*, Polymarket US is a "person acting under" the CFTC.  28 U.S.C. § 1442(a)(1); *see Express Scripts*, 119 F.4th at 184 n.4 ("A 'person' includes a corporation . . . ."); 1 U.S.C. § 1 (defining "person" to include "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals").  And Polymarket US acts under the CFTC because it "assist[s]," and "help[s] carry out, the duties or tasks of" the agency.  *Express Scripts*, 119 F.4th at 185.

27.    Polymarket US operates its designated contract market subject to the CFTC's direction and "an unusually close [relationship] involving detailed regulation, monitoring, [and] supervision." *Watson*, 551 U.S. at 153. To operate as a designated contract market, Polymarket US must comply with the CEA's 23 core principles and all CFTC rules governing access, contract design, surveillance, enforcement, dispute resolution, and customer protection. *See* 7 U.S.C. §§ 7(d), 8(a); 17 C.F.R. §§ 38.3(a), 38.151. The CFTC has "sweeping authority" to enforce the CEA and its regulations. *CFTC v. Schor*, 478 U.S. 833, 842 (1986). The CEA expressly authorizes the CFTC to "review and approv[e] . . . event contracts" and thereby permit those contracts to be "listed" for "trading" on federally registered exchanges. 7 U.S.C. § 7a-2(c)(5)(C)(i)-(ii). The CFTC may also suspend or revoke the designation of a contract market, *id.* §§ 7b, 8(b), bring administrative enforcement actions, *id.* §§ 9, 13b, and sue in federal court for, among other things, injunctive relief, the rescission of contracts, and the imposition of trading and registration bans, *id.* § 13a-1.

28.    The relationship between Polymarket US and the CFTC, however, goes well beyond that of a highly regulated entity subject to comprehensive supervision.

29.    To achieve the purpose of the CEA, Congress established "a system of effective self-regulation of trading facilities . . . under the oversight of the Commission." 7 U.S.C. § 5(b). Specifically, Congress granted "self-regulatory organizations such as contract markets . . . a form of delegated [government] discretion" to adopt, implement and enforce regulatory protections— authority that, without contract markets, the CFTC would otherwise exercise itself. *Barry v. Cboe Glob. Mkts., Inc.*, 42 F.4th 619, 625 (7th Cir. 2022); *see* 17 C.F.R. § 1.3 (including contract markets within the definition of "self-regulatory organization"); *Prediction Markets Advisory* at 1 (contract markets have "self-regulatory obligations for the contract markets they operate").

30.    As a designated contract market, Polymarket US "assist[s]," and "help[s] carry out, the duties or tasks of" the CFTC, *Express Scripts*, 119 F.4th at 185, including by "assist[ing] with a governmental function that the government 'itself would have had to perform.'" *Id.* at 185–86 (quoting *Watson*, 551 U.S. at 153–54); *cf. Moore*, 25 F.4th at 34 n.3 ("'[A]cting under' a federal officer . . . contemplate[s] a relationship where the private party engages in an effort 'to assist, or to help carry out, the duties or tasks of the federal superior.'").

31.    In its role as a self-regulatory organization, Polymarket US is specifically charged with a broad array of functions.  For example, a designated contract market is required to "establish, monitor, and enforce compliance with the rules of the contract market," including "access requirements," "the terms and conditions of any contracts to be traded on the contract market," and "rules prohibiting abusive trade practices on the contract market."  7 U.S.C. § 7(d)(2).

32.    A designated contract market also has the "responsibility to prevent manipulation, price distortion, and disruptions . . . through market surveillance, compliance, and enforcement practices and procedures."  7 U.S.C. § 7(d)(4).

33.    A designated contract market likewise must "establish and enforce rules" "to protect markets and market participants from abusive practices committed by any party, including abusive practices committed by a party acting as an agent for a participant."  7 U.S.C. § 7(d)(12). To that end, it also must "maintain rules and procedures to provide for the recording and safe storage of all identifying trade information in a manner that enables the contract market to use the information" "to assist in the prevention of customer and market abuses."  *Id.* § 7(d)(10).

34.    These rules, the CFTC has explained, "play" an "important role . . . in promoting the integrity of derivatives markets."  *Prediction Markets Advisory* at 2.

35.     To implement or revise a rule, a designated contract market must either submit the rule for CFTC approval or certify that the contract complies with federal law and the Commission's requirements.  7 U.S.C. § 7a-2(c)(1).  The CFTC may allow the rule to go into effect, or it may stay the rule's certification pending further review.  *Id.* § 7a-2(c)(2)–(3).

36.     Similarly, to list new event contracts, the entity must either submit the event contract for CFTC approval or certify that the contract complies with federal law and the Commission's requirements.  7 U.S.C. § 7a-2(c)(1), (4)(A), (5)(C); 17 C.F.R. §§ 40.2(a), 40.3(a), 40.11(c).  The CFTC retains authority to investigate, stay, or amend the contract after it has been listed.  17 C.F.R. § 40.2(c).  If the CFTC determines that a proposed "[e]vent contract" involves certain subjects, including "gaming," it has the discretion to prohibit the listing if the contract would be "contrary to the public interest."  7 U.S.C. § 7a-2(c)(5)(C)(i).

37.     And, once listed, designated contract markets must "provide a competitive, open, and efficient market and mechanism for executing transactions that protects the price discovery process."  7 U.S.C. § 7(d)(9)(A).  They must also "establish, monitor, and enforce compliance with" rules relating to "access requirements," *id*. § 7(d)(2)(A)(i), and "establish and enforce rules . . . to promote fair and equitable trading on the contract market," *id*. § 7(d)(12)(B).  To that end, CFTC regulations impose additional "impartial access" requirements, mandating that a contract market provide market participants with nondiscriminatory access and adopt and fairly enforce rules governing denials, suspensions, and terminations of access.  17 C.F.R. § 38.151(a)–(c).

38.     In all of these respects, a designated contract market exercises authority delegated by the federal government, "perform[ing] a job that" otherwise "the Government itself would have had to perform."  *Watson*, 551 U.S. at 154.  Because Polymarket US's actions involve "an effort

to assist, or to help carry out, the duties or tasks of the federal superior," the CFTC, Polymarket US

"'act[s] under'" that agency. *Id*. (emphasis omitted).

39.     *Second*, Rhode Island's lawsuit directly challenges actions Polymarket US takes

under the authority, supervision, and jurisdiction of the CFTC.

  a.  Plaintiff says that by offering its platform and operations to Rhode Island residents, Polymarket US "render[s itself] subject to Rhode Island's gambling laws and regulations" and thus "operate[s] in Rhode Island outside of the State's control . . . in violation of Sections 15 and 22 of Article 6 of the Rhode Island Constitution." Compl. ¶¶ 105–06.  Yet federal law directs Polymarket US to "establish, monitor, and enforce compliance" with "access requirements," 7 U.S.C. § 7(d)(2), and provide "impartial access to its markets and services," 17 C.F.R. § 38.151(b).

  b.  Plaintiff seeks to impose liability on Polymarket US based on event contracts that Plaintiff believes to be illegal.  *See* Compl. ¶¶ 8–11, 111–19.  But Polymarket US offers those event contracts pursuant to its status as a federally designated contract market subject to comprehensive CFTC oversight.

  c.  Plaintiff says that Polymarket US establishes a market allowing "bettors to wager on both the outcome of sports matches and the performance of individual players in those matches," which it characterizes as illegal "gambling."  Compl. ¶¶ 61–64. But federal law requires Polymarket US to "establish, monitor, and enforce [its users'] compliance" with its rules, including by setting "the terms and conditions of any contracts to be traded on the contract market" and "detect[ing], investigat[ing], and apply[ing] appropriate sanctions" to violators.  7 U.S.C. § 7(d)(2)(A)–(B).

    d.  Plaintiff says that Polymarket US "make[s] available such sports-related 'event contracts' to Rhode Islanders both online and through [its] mobile app[]."  Compl. ¶¶ 57, 102.  Yet federal law requires Polymarket US to "provide a competitive, open, and efficient market and mechanism for executing transactions."  7 U.S.C. § 7(d)(9)(A).  And, again, federal law directs Polymarket US to provide "impartial access to its markets and services."  17 C.F.R. § 38.151(b).

40.    In other words, the connection "between [Polymarket US's] challenged conduct and the performance of its federal duties" is hardly "tenuous, remote, or peripheral"—it is close and direct.  *Plaquemines Par.*, 146 S. Ct. at 1061.

41.    *Third*, Plaintiff's claims are preempted by federal law, which qualifies as a colorable federal defense.  *Express Scripts*, 119 F.4th at 190–92 (finding a plausible preemption defense sufficient for federal officer removal); *see*, *e.g.*, *Flaherty*, 172 F.4th at 227–28 (holding that the CEA preempted similar state-gaming enforcement by New Jersey); *Orgel*, 2026 WL 474869, at *1 (same with respect to Tennessee).

42.    Preemption follows from the express language of the CEA, which grants "exclusive jurisdiction" over exchange-traded swaps to the CFTC, not state regulators.  7 U.S.C. § 2(a)(1)(A). Federal law authorizes the CFTC, not state regulators, to determine whether event contracts involve "gaming" and may be listed on federally regulated exchanges.  7 U.S.C. § 7a-2(c)(5)(C). And Congress ensured that the CFTC—and no "other regulatory agencies"—would establish a uniform, comprehensive regulatory framework to avoid fracturing national derivatives markets. *Merrill Lynch*, 456 U.S. at 386; *see Am. Agric. Movement, Inc. v. Bd. of Trade*, 977 F.2d 1147, 1157 (7th Cir. 1992) (state efforts to interfere with "the operation of a contract market" "are preempted by the CEA").

43.    "One of the primary purposes of the removal statute . . . was to have [federal officers'] defenses litigated in the federal courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969).

44.    This Court can and should recognize its jurisdiction under § 1442(a)(1) to ensure that Polymarket US's preemption defense is fairly and fully litigated.

**SECOND GROUND FOR REMOVAL: FEDERAL QUESTION JURISDICTION**

45.    This case belongs in federal court because it arises under federal law. *See* 28 U.S.C. § 1331.

46.    Plaintiff's claims are expressly based upon federal law and require the adjudication of federal-law issues that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Dante Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

47.    Take, for example, Plaintiff's claim that Polymarket US's event contracts are "casino gaming" under Rhode Island law. Compl. ¶¶ 107, 113 (citing 42 R.I. Gen. Laws § 41-61.2-1(2)). As the Complaint itself makes plain, the State defines "casino gaming" as any "game or device included within the definition of Class III gaming *as that term is defined in Section 2703(8) of Title 25 of the United States Code*." 42 R.I. Gen. Laws § 42-61.2-1(2) (emphasis added); Compl. ¶¶ 30, 107. Plaintiff's claim under this section raises the issue of whether Polymarket US's event contracts fall within that definition.

48.    This issue necessarily requires Plaintiff to contend with federal law. Rhode Island law "express[ly] incorporat[es]" federal law by defining "casino gaming" in relation to IGRA. *See R.I. Fisherman's All., Inc., v. R.I. Dep't of Env't Mgmt.*, 585 F.3d 42, 50 (1st Cir. 2009).

Accordingly, "the federal question here is inherent in the state-law question itself because the state statute expressly references federal law." *Id.* Indeed, "it is not logically possible for [Plaintiff] to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" considers Polymarket US's event contracts to be Class III gaming under IGRA. *See id.* at 49–50. "That is enough to make out a federal question." *Id.* at 49; *accord R.I. Truck Ctr., LLC v. Daimler Trucks N. Am., LLC*, 92 F.4th 330, 342 (1st Cir. 2024) (same).

49. Because Plaintiff's claim depends on establishing that Polymarket US's event contracts qualify as "Class III gaming" under IGRA, "federal law [also] creates the cause of action asserted." *Gunn*, 568 U.S. at 257. This action thus "arises under" federal law within the meaning of 28 U.S.C. § 1331, rendering removal proper under 28 U.S.C. § 1441. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 559 (2005) ("If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a 'civil action' within the meaning of § 1367(a)."). At a minimum, Plaintiff's claim obviously and necessarily requires the Court to interpret and apply disputed questions of federal law.

50. As another example, consider Plaintiff's claim that Polymarket US's event contracts constitute "online sports wagering." Compl. ¶¶ 109, 114. "Online sports wagering" is defined in part as "engaging in the act of sports wagering by the placing of wagers on sports events." 42 R.I. Gen. Laws § 42-61.2-1(27). But the definition of "wager" requires Plaintiff to grapple with federal law. Rhode Island law has long recognized the difference between "wagers" or "gambling transaction[s]" and "lawful trading." For example, in *Winward v. Lincoln*, the Supreme Court of Rhode Island considered whether a certain transaction was a lawful, legitimate transaction or instead a wagering contract. 51 A. 106, 107 (1902). The court distinguished "lawful trading" from "gambling transaction[s]," and concluded that "lawful trading in stocks has the same

characteristics as *lawful trading in any commodity*." *Id.* at 114 (emphasis added).  Plaintiff's claim here thus raises the issue of whether the event contracts at issue here are "lawful" and "legitimate transaction[s]." *See id.* at 112.

51.    This issue again necessarily requires Plaintiff to contend with federal law. Determining whether an event contract is "lawful trading" or instead a "gambling transaction" requires an inquiry into both state and federal law.  *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 157 (1982) ("[T]he Constitution, laws, and treaties of the United States are as much a part of the law of every State as its own local laws and Constitution."); *Howlett ex rel. Howlett v. Rose*, 496 U.S. 356, 380 (1990) ("The federal law is law in the State as much as laws passed by the state legislature.").  "As a result, whether the contracts at issue are unlawful gambling contracts—or instead federally authorized event contracts—cannot be resolved by reference to [state] law alone." *Ga. Gambling Recovery LLC v. Kalshi Inc.*, 2026 WL 279375, at *3 (M.D. Ga. Feb. 3, 2026).

52.    Polymarket US's event contracts are lawful, valid swaps under the CEA.  The CEA defines "swap" broadly, 7 U.S.C. § 1a(47)(A), such that Polymarket US's event contracts fall within its definition.  Plaintiff's ability to demonstrate that event contracts are *not* lawful and therefore sustain a claim upon which relief may be granted "necessarily depends on the interpretation and application of the CEA and the scope of the CFTC's exclusive jurisdiction." *See Ga. Gambling*, 2026 WL 279375, at *3.

53.    Allowing a state court to adjudicate the legality of—and enjoin the trading of— federally regulated swaps would fracture national derivatives markets and undermine the uniformity Congress deemed essential by granting the CFTC exclusive jurisdiction over these markets.  The CFTC said as much just this month. *See, e.g.*, CFTC Sixth Cir. Amicus Br. 2 (noting

State's "jurisdictional overreach" could "imperil[]" the CFTC's "longstanding jurisdiction" over event contracts and that issues "may extend to other forms of derivatives trading"); Minnesota Compl. ¶¶ 81–84. Upholding federal jurisdiction here does not disrupt the federal-state balance; it enforces it.

## ALL REMOVAL REQUIREMENTS ARE MET

54. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action because Plaintiff's claims are for or relating to actions that Polymarket US took under color of federal office.

55. Based on the foregoing facts and allegations, this Court also has original jurisdiction over this action because the Complaint arises under and necessarily raises substantial, disputed federal questions that belong in a federal court.

56. Venue is proper in this Court because the United States District Court for the District of Rhode Island is the federal judicial district embracing the Providence County Superior Court, where Plaintiff originally commenced the state court action. 28 U.S.C. §§ 1391, 1441(a), 1446(a).

57. Removal is timely because Polymarket US has not yet been served, meaning it necessarily has not been more than 30 days since service of Plaintiff's Complaint. 28 U.S.C. §§ 1446(b)(1), (2)(B).

58. A copy of Plaintiff's complaint is attached hereto. 28 U.S.C. § 1446(a).

59. Polymarket US will provide Plaintiff with written notice of this filing and will promptly file a true and correct copy of this Notice of Removal with the Clerk of the Providence County Superior Court. The Notice of Filing of Notice of Removal to be filed with Providence County Superior Court is attached. 28 U.S.C. § 1446(d).

60.     By filing this Notice of Removal, Polymarket US does not waive any objections as to notice, service, personal jurisdiction, venue, or any other defenses.  Polymarket US reserves all of its defenses, and this Notice of Removal is filed subject to full reservation of any rights and all objections, arguments, and defenses to Plaintiff's Complaint.

## CONCLUSION

61.     Polymarket US hereby removes this action and respectfully requests that the Court retain jurisdiction for all further proceedings in this matter.

Dated: May 22, 2026

Respectfully submitted,

/s/ Matthew H. Parker
WHELAN CORRENTE & FLANDERS LLP

Matthew H. Parker (#8111)
100 Westminster Street, Suite 710
Providence, RI 02903
Telephone:  401.270.4500
Fax: 401.270.3760
mparker@whelancorrente.com

Orin Snyder*
Matt Benjamin*
Amanda LeSavage*
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com
alesavage@gibsondunn.com

Thomas H. Dupree, Jr.*
Jacob T. Spencer*
Adam I. Steene*
GIBSON DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
tdupree@gibsondunn.com
jspencer@gibsondunn.com
asteene@gibsondunn.com

*Applications for pro hac vice forthcoming

Attorneys for Defendant QCX LLC d/b/a
Polymarket US

21

## CERTIFICATION OF SERVICE

I hereby certify that the within document has been electronically filed and served with the Court on the 22nd day of May 2026, and is available for viewing and downloading from the ECF system.

/s/ Matthew H. Parker