**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

|  |  |
|---|---|
| THE STATE OF RHODE ISLAND by and through ATTORNEY GENERAL PETER F. NERONHA, <br><br> *Plaintiff*, <br><br> v. <br><br> KALSHIEX LLC; QCX LLC d/b/a POLYMARKET US, <br><br> *Defendants*. | Case No. 1:26-cv-00333-MSM-PAS <br><br> Removed from the Superior Court for the State of Rhode Island, Providence County, Case No. PC-2026-2753 <br><br> **QCX LLC'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> **ORAL ARGUMENT REQUESTED** |

QCX LLC d/b/a Polymarket US ("Polymarket US") joins KalshiEX LLC ("Kalshi") and the Commodity Futures Trading Commission ("CFTC") in seeking a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure to prevent imminent and irreparable harm caused by the State of Rhode Island's defiance of federal law.  *See* Kalshi Mem. of Law in Support of TRO and PI, *KalshiEX LLC v. Furcolo*, No. 1:26-cv-327 (D.R.I. May 22, 2026), Dkt. No. 5-1 ("Kalshi Mot."); CFTC Mem. of Law in Support of PI, *KalshiEX LLC v. Furcolo et al.*, No. 1:26-cv-327 (D.R.I. May 29, 2026), Dkt. No. 23-1 ("CFTC Mot.").

**INTRODUCTION**

Polymarket US operates a lawful, nationwide event-contract market overseen by the CFTC. Congress granted the CFTC "exclusive jurisdiction" over derivatives traded on designated contract markets through the Commodity Exchange Act ("CEA").  7 U.S.C. § 2(a)(1)(A).  By attempting to enforce its own gaming laws against Polymarket US, the State of Rhode Island ignores Congress's command.  Rhode Island now threatens Polymarket US with crippling state enforcement unless Polymarket US abandons its federally protected right to operate in Rhode

Island. Judicial intervention is necessary to put an end to this unlawful coercion, preserve the status quo, and enforce Congress's federal scheme.

Rhode Island's attempt to enforce its preempted laws inflicts irreparable harm on Polymarket US by exposing it to potential penalties, disrupting its federally authorized operations, and undermining user trust in and goodwill toward Polymarket US. The balance of equities and the public interest overwhelmingly favor injunctive relief. Rhode Island suffers no cognizable injury in being precluded from enforcing its gambling laws in an area that Congress has withdrawn from the state. The Court should therefore grant the motions for a preliminary injunction.

## PROCEDURAL BACKGROUND

On May 21, 2026, Kalshi sued in this Court to enjoin the State from enforcing Rhode Island state laws with respect to transactions traded or executed on Kalshi's designated contract market. *See KalshiEX LLC v. Furcolo*, No. 1:26-cv-327 (D.R.I. May 21, 2026), Dkt. No. 1. Later that day, the State of Rhode Island sued both Polymarket US and Kalshi in Providence County Superior Court seeking to enjoin Polymarket US and Kalshi from listing federally regulated offerings in the State. *Rhode Island v. KalshiEX LLC*, No. PC-2026-02753 (Super. Ct. May 21, 2026).

On May 22, 2026, Polymarket US, with Kalshi's consent, removed the state-court action from Providence County Superior Court to this Court. *Rhode Island v. KalshiEX LLC*, No. 1:26-cv-333 (D.R.I. May 22, 2026), Dkt. No. 1. Also on May 22, 2026, Kalshi filed a motion for a temporary restraining order and preliminary injunction. *KalshiEX LLC v. Furcolo*, No. 1:26-cv-327 (D.R.I. May 22, 2026), Dkt. No. 5. On May 28, 2026, the United States and the CFTC moved to intervene in *KalshiEX LLC v. Furcolo* and, the next day, filed a motion for a preliminary injunction. *See* No. 1:26-cv-327 (D.R.I.), Dkt. Nos. 19, 23, 23-1.

1

On June 5, 2026, the parties filed a consent motion to consolidate both actions.  *See Rhode Island v. KalshiEX LLC*, No. 1:26-cv-333 (D.R.I. June 5, 2026), Dkt. No. 25; *KalshiEX LLC v. Furcolo*, No. 1:26-cv-327 (D.R.I. June 5, 2026), Dkt. No. 26.  The consent motion noted that Rhode Island will not seek to remand this case.[1]

### BACKGROUND REGARDING POLYMARKET US

The CFTC granted Polymarket US its designation as a contract market on July 9, 2025.  *See* Declaration of Jacob T. Spencer, attached hereto ("Spencer Decl."), Ex. 5 (July 9 CFTC Designation); Declaration of Justin Hertzberg, attached hereto ("Hertzberg Decl.") ¶ 3.  That designation reflects a rigorous federal determination that Polymarket US could and would satisfy all federal requirements governing market integrity, transparency, financial safeguards, and customer protection.

Polymarket US specializes in contracts concerning real-world events that matter to the public.  *See* Hertzberg Decl. ¶ 4.  Starting on September 30, 2025, and continuing through its more recent self-certifications on April 14, 2026, and May 20, 2026, Polymarket US self-certified various contracts related to financial events, elections, sports and other events with the CFTC.  *See* Spencer Decl. Exs. 1, 6–9 (Self-Certifications); *see also* Hertzberg Decl. ¶ 5.  The CFTC did not exercise its exclusive authority to stay or prohibit trading in those contracts.  *See* 7 U.S.C. § 7a-2(c).

Polymarket US's CFTC designation and contract certifications mark the culmination of a years-long effort to ensure compliance with the CEA and CFTC regulations.  In 2022, the CFTC took the position that event contracts concerning "current events" then offered by Polymarket US's

---

[1] Polymarket US respectfully requests that this motion be heard on the same schedule as the motions for preliminary injunction filed by Kalshi and the CFTC in *KalshiEX LLC v. Furcolo*, No. 1:26-cv-327.

parent company (Blockratize Inc., d/b/a Polymarket) "constitute[d] swaps under the CFTC's jurisdiction." *In re Blockratize, Inc.*, 2022 WL 73864, at \*1–2 (CFTC Jan. 3, 2022). As part of a consent decree, Polymarket agreed that it would offer future event contracts within the United States only if it obtained CFTC designation as a contract market. *Id*. at \*8–9. No State or state regulatory authority objected to this order.

After receiving its CFTC designation as a contract market, Polymarket US represented to the CFTC that "all" its event contracts fall "within the definition of 'swap' under the [CEA]." Spencer Decl. Ex. 10 (CFTC No Action Letter) at 2. The CFTC accepted that representation. *Id*. at 4.

## ARGUMENT

For the reasons set forth in Kalshi's and the CFTC's memoranda of law in support of their motions for a preliminary injunction, and the reasons below, preliminary injunctive relief is warranted because (1) Polymarket US is likely to succeed on the merits, (2) Polymarket US will be irreparably harmed absent an injunction, and (3) the balance of the equities strongly favors preliminary relief.

## I.     Polymarket US Is Likely To Succeed On The Merits.

Rhode Island's efforts to regulate Polymarket US's event contracts are preempted by Congress's decision to grant the CFTC exclusive jurisdiction to regulate such contracts. Congress may preempt state law expressly or through implied field or conflict preemption, *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000), all of which bar Rhode Island from regulating event contracts on Polymarket US. *See also* Kalshi Mot. 10–23; CFTC Mot. 11–20.

***Express Preemption***. Congress expressly preempted state regulation of swaps traded on designated contract markets like Polymarket US by granting the CFTC "exclusive jurisdiction"

3

over those transactions. Kalshi Mot. 13–14; CFTC Mot. 5–7, 11.

*First*, the event contracts traded on Polymarket US are swaps. *See* Kalshi Mot. 11–13; CFTC Mot. 12–14. Event contracts are "contract[s]" that pay out depending on the "occurrence, nonoccurrence, or extent of occurrence" of a future "event or contingency associated with potential financial, economic, or commercial consequence[s]." 7 U.S.C. § 1a(47)(A)(ii) (defining "swap"). Polymarket US's sports-event contracts, no less than other event contracts, fall within the CEA's definition of swap. *See*, *e.g.*, Spencer Decl. Ex. 1 (Athletic Event Contracts) at 3 (certifying event contract where the outcome is "the official result of an athletic association"). Winning the World Series or Super Bowl, for example, has massive financial implications for a host of businesses, as does the outcome of many other sporting events. Spencer Decl. Exs. 2–4. This is why the CFTC has recognized that event contracts—including sports-related event contracts—are swaps. CFTC Mot. 12–14.

*Second*, the text of the CEA is plain and dispositive as to the CFTC's jurisdiction. Section 2 expressly provides that the *CFTC*, not state regulators, "shall have exclusive jurisdiction . . . with respect to . . . transactions involving swaps . . . traded or executed on a contract market." 7 U.S.C. § 2(a)(1)(A). The Supreme Court has repeatedly held that a grant of "exclusive" "jurisdiction" to the federal government preempts state law. *See*, *e.g.*, *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 233 (1947). And because the CEA confers exclusive jurisdiction "with respect to" certain transactions, the preemption clause has a "wide sweep." *Nw. Selecta, Inc. v. Gonzalez-Beiro*, 145 F.4th 9, 18 (1st Cir. 2025). Likewise, both the statutory context and the legislative history confirm CEA Section 2's preemptive effect. *See* Kalshi Mot. 14–16; CFTC Mot. 15–17.

**Field Preemption**. There is no doubt that "Congress intend[ed] federal law to occupy the field" of regulation for Polymarket US's event contracts. *Crosby*, 530 U.S. at 372. Courts have

4

long recognized that the CEA establishes "a comprehensive scheme for regulation of trading in commodity futures." *E.g.*, *CFTC v. British Am. Commodity Options*, 560 F.2d 135, 138 (2d Cir. 1977). As Kalshi and the CFTC have catalogued, the extensive breadth of the CEA's regulatory scope and structure confirms that Congress intended to foreclose concurrent state jurisdiction for event-contract trading on designated contract markets. *See* Kalshi Mot. 18–20; CFTC Mot. 17–19.

    ***Conflict Preemption***.  Rhode Island's enforcement efforts also frustrate the central "purposes and objectives of Congress." *Crosby*, 530 U.S. at 373. *First*, Congress amended the CEA to establish a uniform federal framework for derivatives trading; permitting Rhode Island (or any other State) to bring an enforcement action under state gaming law stands as an obstacle to the goal of uniformity and makes it all-but-inevitable that designated contract markets will face similar actions elsewhere—subjecting those markets to "different substantive standards applicable to the same . . . conduct." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990); *see* Kalshi Mot. 20–21; CFTC Mot. 20. *Second*, Rhode Island's enforcement efforts stand in direct conflict with Congress's deliberate decision to permit designated contract markets like Polymarket US to self-certify contracts and subject them to *post hoc* public-interest review *only* by the CFTC. *See* 7 U.S.C. § 7a-2(c)(1), (5)(C)(i); Kalshi Mot. 23; CFTC Mot. 18–19. *Lastly*, permitting Rhode Island to restrict trading on a national designated contract market based on a trader's location would, according to the CFTC, conflict with Polymarket US's duty to provide "impartial access." 17 C.F.R. § 38.151(b); *see* Kalshi Mot. 21–22; CFTC Mot. 20.

## II.    Polymarket US Will Be Irreparably Harmed Without An Injunction.

    Polymarket US suffers irreparable harm so long as Rhode Island enforces or compels compliance with its preempted laws. *See* Kalshi Mot. 23–26; CFTC Mot. 21. Without immediate

relief, "the prospect of [an ongoing] state suit" and other enforcement actions amplifies Polymarket US's "irreparable injury." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992). Polymarket US is put to an impossible choice: "continually violate [Rhode Island] law and expose [itself] to potentially huge liability" or "suffer the injury of obeying [state] law during the pendency of the proceedings and any further review." *Id*. at 381; *see, e.g.*, R.I. Gen. Laws §§ 11-19-1, 11-19-14, 11-19-18, 11-19-39, 42-61.2-13. Irreparable harm looms either way.

Polymarket US suffers irreparable harm for each day Rhode Island is permitted to pursue enforcement because enforcement impacts its reputation and brand as a CFTC-regulated, designated contract market. Hertzberg Decl. ¶¶ 11–12. Reputational harm is a quintessential example of an "irreparable" harm because "injury to goodwill and reputation is not easily measured or fully compensable in damages." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 20 (1st Cir. 1996); *see Total Petroleum P.R. Corp. v. Colon-Colon*, 577 F. Supp. 2d 537, 552 (D.P.R. 2008) (finding that "harm to plaintiff's reputation" and "alienation of future customers" constitutes "incalculable damage"); Kalshi Mot. 25.

Compliance with Rhode Island's unlawful demands would be just as harmful because ceasing operations would similarly deal a setback to Polymarket US's goodwill and reputation within the State, harming its business prospects in Rhode Island. *See* Hertzberg Decl. ¶¶ 10–12; *Ross-Simons of Warwick*, 102 F.3d at 20; Kalshi Mot. 24. For users outside of Rhode Island, liquidity would decrease without Rhode Island-based trading, deterring other customers outside of Rhode Island from using the platform. Reduced liquidity dampens both price discovery and market efficiency—features that help make event contracts useful predictive tools—undermining the orderly functioning of Polymarket US's nationwide platform and resulting in a product that users may consider less desirable. *See* Hertzberg Decl. ¶ 9. And given the State's sovereign

immunity, Polymarket US would not be able to recover from the State any losses it incurs as a result of shutting down in Rhode Island; those losses are therefore irreparable. *See Rosario-Urdaz v. Rivera-Hernandez*, 350 F.3d 219, 222 (1st Cir. 2003) ("The unavailability of . . . monetary damages against either the [State] or the defendants in their official capacities goes a long way toward establishing irreparable injury."); Hertzberg Decl. ¶ 8.

## III.    The Balance Of Equities And Public Interest Strongly Favor Preliminary Relief.

Rhode Island has intruded on the CFTC's exclusive jurisdiction over derivatives traded on designated contract markets, and "[n]either equity nor the public's interest are furthered by allowing violations of federal law to continue." *Feitoza v. Noem*, 2026 WL 252422, at *6 (D. Mass. Jan. 30, 2026); *see Siembra Finca Carmen, LLC v. Sec'y of Dep't of Agric. of Puerto Rico*, 437 F. Supp. 3d 119, 137 (D.P.R. 2020) ("[T]he public interest is harmed by the enforcement of laws repugnant to the United States Constitution."); Kalshi Mot. 26–27.  Rhode Island's actions threaten to fracture a uniform federal regulatory framework, disrupt lawful markets, and deprive its residents of lawful access to information-rich platforms Congress sought to protect.

By contrast, injunctive relief would not impair Rhode Island's legitimate interests.  Rhode Island has no cognizable interest in enforcing preempted laws:  It "cannot suffer harm from an injunction that merely ends an unlawful practice." *Massachusetts v. Nat'l Insts. of Health*, 770 F. Supp. 3d 277, 326 (D. Mass. 2025), *aff'd*, 164 F.4th 1 (1st Cir. 2026) (internal quotation marks omitted); *see* CFTC Mot. 22.  Thus, the public interest and equities favor a preliminary injunction here.

## IV.    Preliminary Relief Without Bond Is Appropriate.

There is "ample authority for the proposition that the provisions of Rule 65(c) are not mandatory and that a district court retains substantial discretion to dictate the terms of an injunction bond." *Int'l Assoc. of Machinists and Aerospace Workers v. E. Airlines*, 925 F.2d 6, 9 (1st Cir.

1991); *see Colorado v. U.S. Dep't of Health & Hum. Servs.,* 788 F. Supp. 3d 277, 315 (D.R.I. 2025), *appeal dismissed*, 2025 WL 4057116 (1st Cir. July 29, 2025) (district courts possess "broad discretion" in determining "the appropriate amount of an injunction bond," including whether "to require no bond at all") (internal citations omitted).  Here, waiving bond is appropriate because an injunction against enforcing Rhode Island's preempted regulations will not result in "damages which would necessitate a bond." *Textron Fin. Corp. v. Two Rivers, Inc.*, 2010 WL 5778771, at *4 n.4 (D.R.I. Oct. 28, 2010).  Polymarket US respectfully requests that the Court grant a preliminary injunction without requiring a bond.

## CONCLUSION

For these reasons and those set forth in Kalshi's and the CFTC's motions, this Court should grant Polymarket US's motion for a preliminary injunction.

Dated: June 9, 2026

Respectfully submitted,

*/s/ Matthew H. Parker*
Matthew H. Parker (#8111)
Jessica Sylver (#8607)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Telephone:  401.270.4500
Fax: 401.270.3760
mparker@whelancorrente.com
jsylver@whelancorrente.com

Orin Snyder*
Matt Benjamin*
Amanda LeSavage*
GIBSON DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
Telephone: 212.351.4000
osnyder@gibsondunn.com
mbenjamin@gibsondunn.com
alesavage@gibsondunn.com

Thomas H. Dupree, Jr.*
Jacob T. Spencer*
Adam I. Steene*
GIBSON DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
tdupree@gibsondunn.com
jspencer@gibsondunn.com
asteene@gibsondunn.com

*Admitted pro hac vice*

*Attorneys for Defendant QCX LLC d/b/a
Polymarket US*

9